## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA

JOHN DOE,

     Plaintiff,

     v.

JEHOVAH'S WITNESSES GOVERNING
BODY, a business and/or religious entity, THE
WATCHTOWER BIBLE AND TRACT
SOCIETY OF NEW YORK, INC., a corporation,
THE WATCHTOWER BIBLE AND TRACT
SOCIETY OF PENNSYLVANIA, a corporation,
THE WATCHTOWER BIBLE AND TRACT
SOCIETY OF FLORIDA, INC., a corporation,
and CHRISTIAN CONGREGATION OF
JEHOVAH'S WITNESSES, a corporation,

     Defendants.

Case No.: 1:26-cv-23

## COMPLAINT AT LAW

JOHN DOE, by and through his attorneys, GEORGIA LAW TEAM, PC, complaining

against JEHOVAH'S WITNESSES GOVERNING BODY, THE WATCHTOWER BIBLE AND

TRACT SOCIETY OF NEW YORK, INC., a New York corporation, THE WATCHTOWER

BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, a Pennsylvania corporation, THE

WATCHTOWER BIBLE AND TRACT SOCIETY OF FLORIDA, INC, a New York corporation,

and CHRISTIAN CONGREGATION OF JEHOVAH'S WITNESSES, a New York corporation

states as follows:

## INTRODUCTION

PLAINTIFF JOHN DOE (PLAINTIFF) brings this action against Defendants for the

childhood sexual abuse he suffered at the hands of Lorenza Davis (Davis), a member and Bible

study teacher within the Cordele Congregation of Jehovah's Witnesses. Davis exploited his

1

position of trust and authority within the congregation to sexually abuse PLAINTIFF over an extended period when PLAINTIFF was a minor. In 2024, Davis was convicted of aggravated sexual abuse of PLAINTIFF. Throughout the period of abuse, Defendants knew or should have known of Davis' dangerous propensities, yet negligently failed to properly supervise him, failed to implement reasonable safety protocols, and failed to protect PLAINTIFF and other vulnerable children in their care.

## JURISDICTION & VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and (c).

2.      Venue is proper under 28 U.S.C. § 1391 (b)(2).

## PARTIES

3.      JOHN DOE (PLAINTIFF) is an adult male.

4.      PLAINTIFF was a minor at the time of the childhood sexual abuse described herein.

5.      At all times relevant herein, PLAINTIFF was a resident of the State of Georgia.

6.      At all times relevant herein, Defendant JEHOVAH'S WITNESSES GOVERNING BODY (GOVERNING BODY) was a business and/or religious entity conducting business in the State of New York, with its world headquarters in Tuxedo Park, New York 10987.

7.      At all times relevant herein, Defendant THE WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC. (WATCHTOWER NY) was a corporation, authorized to do business in the State of New York, with its principal address in Patterson, New York.

8.      At all times relevant herein, Defendant THE WATCHTOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA (WATCHTOWER PA) was a Pennsylvania

corporation, authorized to do business in the State of New York, with its principal address in Tuxedo Park, New York.

9.      At all times relevant herein, Defendant THE WATCHTOWER BIBLE AND TRACT SOCIETY OF FLORIDA, INC. (WATCHTOWER FL) was a Florida corporation, authorized to do business in the State of New York, with its principal address in Wallkill, New York.

10.      At all times relevant herein, Defendant CHRISTIAN CONGREGATION OF JEHOVAH'S WITNESSES (CHRISTIAN CONGREGATION) was a corporation, authorized to do business in the State of New York, with its principal address in Wallkill, New York.

## STATUTE OF LIMITATIONS

11.      This is an action for childhood sexual abuse brought pursuant to § 9-3-33.1 of the Official Code of Georgia Annotated (OCGA).

12.      In 2024, Davis was convicted of the aggravated child molestation of PLAINTFF.

13.      An aggravated child molestation conviction constitutes childhood sexual abuse under OCGA § 9-3-33.1(b)(1)(E).

14.      OCGA § § 9-3-33.1 (b)(2)(A)(i) provides that "any civil action for recovery of damages suffered as a result of childhood sexual abuse committed on or after July 1, 2015, shall be commenced [o]n or before the date the plaintiff attains the age of 23 years."

15.      PLAINTIFF is 18 years of age as of the date of the filing of this complaint.

16.      PLAINTIFF's complaint is timely filed.

## BACKGROUND FACTS APPLICABLE TO ALL COUNTS
### JEHOVAH'S WITNESSES GOVERNING BODY

17.     Defendant GOVERNING BODY is the governing body of the national congregation of Jehovah's Witnesses and provides direction for Jehovah's Witnesses worldwide.

18.     Defendant GOVERNING BODY oversees the preparation of Bible-based instruction through the publications, meetings, and schools of Jehovah's Witnesses.

19.     Defendant GOVERNING BODY also supervises the worldwide work of Jehovah's Witnesses through directing their public ministry and overseeing the use of donated assets.

20.     Upon information and belief, Defendant GOVERNING BODY has a chairman who is selected based on the annual rotation system of the chairmanship among its members.

21.     The organizational structure of the Jehovah's Witnesses is hierarchical, with Defendant GOVERNING BODY as the organizational head of the Jehovah's Witnesses.

22.     Upon information and belief, authority flows downward from Defendant GOVERNING BODY to local levels of the organization, which is made up of local congregations.

23.     Defendant GOVERNING BODY approves the formation of corporations to support Jehovah's Witnesses in the United States.

24.     Upon information and belief, Defendant GOVERNING BODY provides direction for Jehovah's Witnesses worldwide and decides all or part of the actions related to the operation of the organization, including, but not limited to, local congregations.

25.     In 2001, Defendant GOVERNING BODY approved the formation of Defendant CHRISTIAN CONGREGATION of Jehovah's Witnesses, Religious Order of Jehovah's Witnesses, and Kingdom Support Services, Inc, which operate along with the Defendants WATCHTOWER NY, WATCHTOWER PA, and WATCHTOWER FL, among other organizations.

26.    At all times relevant herein, administrators, employees, volunteers, and others who served various Jehovah's Witnesses institutions acted as Defendant GOVERNING BODY's actual and/or apparent agents, servants, and/or employees.

**Defendants WATCHTOWER NY, WATCHTOWER PA, and WATCHTOWER FL**

27.    Watchtower organizations, including Defendants WATCHTOWER NY, WATCHTOWER PA, and WATCHTOWER FL, are cooperating legal entities that support the publishing activities, education and missionary work, and administrative and legal operations of Jehovah's Witnesses worldwide.

28.    While separate from the Defendant GOVERNING BODY, Watchtower members, and directors, including Defendants WATCHTOWER NY, WATCHTOWER PA, and WATCHTOWER FL, assist the Defendant GOVERNING BODY.

29.    Upon information and belief, Defendants WATCHTOWER PA, WATCHTOWER NY, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION are, first and foremost, corporate institutions moonlighting as religious organizations, and are primarily engaged in the real estate and publication industries.

30.    Upon information and belief, Defendants WATCHTOWER PA, WATCHTOWER NY, and/or WATCHTOWER FL are legal entities utilized by Jehovah's Witnesses to direct, administer and disseminate policies, procedures and/or protocols and other texts for the religious groups, and hold title to properties.

31.    At all times relevant herein, administrators, employees and others who served various Jehovah's Witness institutions acted as Defendants WATCHTOWER NY, WATCHTOWER PA, and/or WATCHTOWER FL's actual and/or apparent agents, servants, and/or employees.

**Defendant CHRISTIAN CONGREGATION OF JEHOVAH'S WITNESSES**

32.     Upon information and belief, Defendant CHRISTIAN CONGREGATION is responsible for "congressional matters" and functions as a business by engaging in numerous revenue-producing activities and soliciting money from its members.

33.     At all times relevant hereto, administrators, employees and others who served various Jehovah's Witnesses institutions acted as Defendant CHRISTIAN CONGREGATION's actual and/or apparent agents, servants, and/or employees.

**Organization and Hierarchy of all Defendants**

34.     Under the supervision and control of Defendant GOVERNING BODY, WATCHTOWER PA, WATCHTOWER NY, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION oversee the activities of Jehovah's Witnesses within the United States and function as businesses by engaging in numerous revenue-producing activities and soliciting money for their members.

35.     Besides Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION, Jehovah's Witnesses use dozens of legal entities in various countries around the world, many of which include in their names such terms as "Watch Tower," "Watchtower," or a translation of one of these names.

36.     The authority of these legal entities flows downward into local congregations, many of which are also formed as legal entities.

37.     At all times relevant herein, Defendant GOVERNING BODY jointly with Defendants WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION (and/or any predecessor or successor entities), were responsible

for establishing all policies, procedures, bylaws, and/or protocols for congregations of Jehovah's Witnesses in the United States, including, but not limited to, the Kingdom Hall Congregation in Cordele, Georgia (Cordele Congregation).

38.    Defendant GOVERNING BODY, jointly with Defendants WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION (and/or any predecessor or successor entities), were responsible for establishing the policies, procedures and/or protocols for appointing and supervising elders and ministerial servants within the Jehovah's Witness organization and local congregations, including, but not limited to the Cordele Congregation.

39.    Defendant GOVERNING BODY, jointly with Defendant WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL and/or CHRISTIAN CONGREGATION (and/or any predecessor or successor entities), were responsible for participating in the appointment of elders and ministerial servants, and/or exercising supervision and control over elders and ministerial servants, within the Jehovah's Witnesses organization, including, but not limited to, the Cordele Congregation.

40.    Currently and at the time of the alleged incidents, Defendants GOVERNING BODY, WATCHTOWER PA, WATCHTOWER NY, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION were jointly responsible for governing Jehovah's Witnesses and Jehovah's Witnesses congregations, including, but not limited to, the Cordele Congregation.

41.    Defendants GOVERNING BODY, WATCHTOWER PA, WATCHTOWER NY, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION's governance included, but was not limited, to supervising and controlling all their actual and/or apparent agents, servants,

volunteers, and/or employees located at the Cordele Congregation, including Davis; and the assignment of elders of the Cordele Congregation.

42.    Defendant GOVERNING BODY, jointly with Defendant WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION (and/or any predecessor or successor entities), appoints "Circuit Overseers" as the actual and/or apparent agents, servants and/or employees of the Watchtower organizations, including, but not limited to, Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION.

43.    Each congregation, including, but not limited to, the Cordele Congregation, is under the jurisdiction of a Circuit Overseer, who travels to each of the 18 to 25 congregations in his circuit for one week per quarter as a direct representative of Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION.

44.    Circuit Overseers have the actual authority to appoint elders and ministerial servants within the organization.

45.    This authority includes the ability to suspend, temporarily or permanently, the title and/or relationship of elders and ministerial servants within the organization.

46.    Circuit Overseers exercise supervision and control over elders and ministerial servants on behalf of Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL and/or CHRISTIAN CONGREGATION, and ministerial servants maintain their status at the pleasure of the Circuit Overseer in consultation with the elders and of the overall Jehovah's Witnesses organizational structure.

47.     Upon information and belief, at all times relevant herein, Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION, jointly and/or individually, directly and/or through Circuit Overseers, had ultimate authority and responsibility for training, ordination, placement, transfer and/or suspension of elders and ministerial servants.

48.     Upon information and belief, congregations, including, but not limited to, the Cordele Congregation, are locally managed by a "Body of Elders."

49.     Each elder serving in the "Body of Elders" is appointed and supervised by Defendant GOVERNING BODY through the Circuit Overseer.

50.     The Body of Elders and/or each individual elder is an actual and/or apparent agent, servant and/or employee of Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION.

51.     Elders, including the elders of the Cordele Congregation, organize weekly church meetings, direct door-to-door preaching activities, select potential candidates for becoming elders and ministerial servants, handle finances for the congregation, and form and/or serve on committees in the organization's quasi-judicial proceedings.

52.     Upon information and belief, local elders, including, but not limited to, the elders of the Cordele Congregation, have day-to-day authority over training, and placement of all ministerial servants within the congregations.

53.     Upon information and belief, ministerial servants maintain their status at the pleasure of the Circuit Overseers in consultation with the elders, and Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION.

54.    Upon information and belief, at all times relevant herein, Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION were in a superior position to receive sensitive information regarding immoral and criminal conduct within the organization and at local congregations, including, but not limited to information about Davis.

55.    This information was not available to members of the public, PLAINTIFF, the PLAINTIFF's mother, or the Cordele Congregation.

56.    Upon information and belief, and at all times relevant, Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION's approved members of congregations for promotions through the ranks of the organization, formed committees, and/or conducted other personnel managerial tasks within the United States, including, but not limited to, at the Cordele Congregation.

57.    Upon information and belief, and at all times relevant, Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION's established policies, procedures and/or protocols for congregations throughout the world, including, but not limited to, the Cordele Congregation, and constantly revised those policies and procedures to protect known child sexual abusers and corporate assets.

58.    The complex and intricate, and often secretive, structure of the Defendants demonstrates their intent to conceal unlawful behavior, especially including their intent to cover up widespread instances of child sexual abuse.

59.    Upon information and belief, through their words and deeds, Defendants, directly and/or by and through their actual and/or apparent agents, servants and/or employees, explicitly and implicitly encouraged members of the Cordele Congregation, including, but not limited to,

PLAINTIFF and his family, to accept each ministerial servant, including, but not limited to Davis, as men worthy of being entrusted with children, and to be worthy of the responsibility for children's physical and spiritual safety, thereby inducing children, including, but not limited to, PLAINTIFF, to entrust themselves to the company and care of these men.

60.     At the time of the incidents alleged herein, Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION considered sexual abuse to be a form of serious wrongdoing.

61.     At the time of the incidents alleged herein, the response chain for a complaint of sexual abuse started with a complaint made to any elder, either by the victim or a member with knowledge of the abuse.

62.     After a complaint of serious wrongdoing is made to any elder, two (2) elders from the congregation conduct an initial investigation into the complaint. If the initial investigation shows that the complaint is meritorious, a Judicial Committee of three (3) elders is convened to determine whether the alleged wrongdoing was witnessed by two (2) people, or whether the wrongdoer is willing to confess.

63.     This "two-witness" policy is an edict from Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION, and is very strict—even in cases of child sexual abuse if there are not at least two (2) eyewitnesses to the abuse and the wrongdoer denies the wrong, the elders will not take judicial action against the accused.

64.     At the time of the incidents alleged herein, if the wrongdoer confesses, or the investigative committee determines that there are two (2) witnesses, the elders of that congregation form a Judicial Committee for a hearing on the charge of wrongdoing.

65.     The purpose of the hearing is not to determine whether the allegations of the complaint are sustained, rather, the Judicial Committee holds the hearing to determine whether the accused is repentant. The Judicial Committee determines the appropriate corrective action based on the wrongdoer's purported repentance for the wrongful act.

66.     If the wrongdoer is repentant, they are allowed to remain in the congregation but may not serve or lead the congregation. If the wrongdoer is not repentant, they may be disfellowshipped, which is sometimes called excommunication or "being shunned." Disfellowship is not always permanent, and individuals can seek reinstatement in the congregation.

67.     At the time of the incidents alleged herein, a person in disfellowship can seek reinstatement into the congregation by written request to the elders.

68.     Based on the findings of the Judicial Committee hearing, and out of concern for the welfare of children, elders may privately warn the parents of minors in the congregation of the need to monitor their children's interactions with the wrongdoer.

69.     Upon information and belief, local congregations are also required to call the legal department of Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION to report the abuse, and the legal department determines whether to report it the authorities.

**Jehovah's Witnesses Bible Study**

70.     Defendants GOVERNING BODY, WATCHTOWER PA, WATCHTOWER NY, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION teach their beliefs to congregants, in part, through one-on-one Bible Study courses using materials produced by the Watchtower organization.

71.     Defendants GOVERNING BODY, WATCHTOWER PA, WATCHTOWER NY, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION advertise that Bible Study instructors, called Idle Teachers, are available to meet with students "anytime, anywhere."

72.     Upon information and belief, Idle Teachers are actual and/or apparent agents, servants and/or employees of Defendants GOVERNING BODY, WATCHTOWER PA, WATCHTOWER NY, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION.

73.     Upon information and belief, congregation elders select Idle Teachers to be Bible Study instructors.

### Davis' Prior Bible Study

74.     Upon information and belief, between 2017 and 2018, prior to being assigned as PLAINTIFF's Bible study teacher, Davis was involved with the Jehovah's Witnesses Congregation in Americus, Georgia (Americus Congregation).

75.     Upon information and belief, while at the Americus Congregation, Davis was conducting Bible study with a boy from the Americus Congregation but suddenly stopped without explanation.

76.     Upon information and belief, shortly thereafter, Davis relocated from the Americus Congregation to the Cordele Congregation where PLAINTIFF attended.

77.     Such sudden congregation transfers are not normal practice among Jehovah's Witnesses.

78.     Upon information and belief, there is typically a documented reason for relocation.

### The Cordele Congregation

79.     At all times relevant herein, the Cordele Congregation was a local Kingdom Hall of the Jehovah's Witnesses.

13

80.    The Cordele Congregation did not form its own legal entity in the State of Georgia.

81.    At all times relevant herein, the Cordele Congregation had ministerial servants serving the congregation.

82.    Ministerial servants were responsible for performing routine organizational and physical tasks.

83.    At all times relevant herein, PLAINTIFF attended, participated in, and was a member of the Cordele Congregation.

84.    Between 2017 and 2018, Davis became a member of the Cordele Congregation.

85.    Despite the unanswered questions surrounding Davis' sudden departure from the Americus Congregation, Davis was selected to be an Idle Teacher responsible for Bible study instruction at the Cordele Congregation.

86.    At all relevant times, Davis was an actual and/or apparent agent, servant and/or employee of Defendants GOVERNING BODY, WATCHTOWER PA, WATCHTOWER NY, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION through his position as an Idle Teacher at the Cordele Congregation.

87.    Upon information and belief, Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION permitted Davis to participate in Bible study instruction even though he was not a ministerial servant.

88.    Johnny Daniel, an Elder in the congregation and Davis' own uncle (Elder Daniel), voted against Davis becoming a ministerial servant because, as he stated, "he knew something was wrong with him."

14

89.    Upon    information    and    belief,    Defendants    GOVERNING    BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION through the elders of the Cordele Congregation, conducted no background check into Davis prior to permitting Davis to participate in Bible study instruction.

90.    Upon    information    and    belief,    Defendants    GOVERNING    BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION through the elders of the Cordele Congregation, provided Davis with no training of any kind prior to permitting him to participate in Bible study instruction.

91.    In or about August 2019, Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION through the elders of the Cordele Congregation, assigned Davis as PLAINTIFF's Bible study teacher and permitted Davis to have unsupervised access to PLAINTIFF, a minor child.

92.    Upon    information    and    belief,    Defendants    GOVERNING    BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION through the elders of the Cordele Congregation, did not supervise Davis' Bible study with PLAINTIFF in any way.

93.    Prior to or during the abuse alleged below, Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION knew, or should have known, or were otherwise on notice, of the risk of childhood sexual abuse by an employee, volunteer, representative, or agent.

94.    Upon    information    and    belief,    Defendants    GOVERNING    BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN

CONGREGATION failed to take reasonable steps or to implement reasonable safeguards to avoid acts of childhood sexual abuse at their congregations, including at the Cordele Congregation.

### Davis Sexually Abused PLAINTIFF

95.     Between on or about August 2019, when PLAINTIFF was in the seventh grade, and on or about January 2022, Davis sexually abused PLAINTIFF on more than one hundred occasions.

96.     The sexual abused included Davis penetrating PLAINTIFF's anus with his penis and Davis placing his mouth on PLAINTIFF's penis.

97.     Upon information and belief, at the time of the sexual abuse, Davis was under the direct supervision, employ, and/or control of Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION.

98.     The abuse took place at multiple locations, including PLAINTIFF's home, Davis' home, and Davis' car/truck.

99.     The abuse frequently occurred after Davis took PLAINTIFF to his weekly allergy shots in Cordele on Thursdays and Fridays, when Davis would take PLAINTIFF to Davis' home while Davis' mother and Cordele Congregation member, Regina Jefferson, was at work.

100.    PLAINTIFF sustained physical injuries as a result of the repeated sexual abuse he suffered.

101.    Davis instructed PLAINTIFF not to tell anyone about the abuse.

102.    Davis accomplished the sexual abuse of PLAINTIFF by using the trust, position, and authority he had as a fellow member, volunteer, and/or Idle Teacher of the religious facility and the Cordele Congregation.

103.    Significantly, much of the sexual abuse that David committed occurred during a time when Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION did not permit in-person contact between members of their congregations, including the Cordele Congregation.

104.    On March 20, 2020, all in-person Jehovah's Witness interactions were officially halted due to the COVID-19 pandemic, including in-person meetings, conventions, assemblies, Bible studies, and door-to-door activities.

105.    Despite this organizational mandate, Davis continued to bring PLAINTIFF to his home for private "Bible studies" with the knowledge and permission of Davis' mother, Regina Jefferson.

106.    The elders directly addressed Davis about violating the organization's COVID-19 safety rules regarding in-person contact.

107.    Upon information and belief, Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION, through the elders, did nothing further to enforce the COVID-19 safety rules regarding in-person contact.

108.    Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION, through the elders never instructed PLAINTIFF's mother to stop her son from studying with Davis or informed her how to conduct virtual Bible study that complied with the COVID-19 safety rules.

109.    Despite being confronted by congregational authority figures about his rule violations, Davis' continued to violate the organization mandate unabated from March 2020

through February 2022—a two-year period—during which Davis continued to sexually abuse PLAINTIFF.

## Davis' Criminal Investigation and Prosecution

110.    On or around February 2, 2022, PLAINTIFF reported Davis' sexual abuse to his mother and then to local law enforcement authorities.

111.    On or around February 3, 2022, an investigator from the Crisp County Sheriff's Office interviewed Davis.

112.    During that interview, Davis admitted to sexually abusing PLAINTIFF.

113.    On or around February 21, 2022, a grand jury in Crisp County, Georgia returned an indictment charging Davis with three counts of aggravated child molestation in violation of OCGA § 16-6-4(c).

114.    As a condition of his bond, Davis was ordered to have no contact with PLAINTIFF.

115.    On or around March 14, 2024, Davis pleaded guilty to two counts of aggravated child molestation and was sentenced to 60 years' imprisonment, the first 27 years to be served in confinement.

116.    As part of his sentence, Davis is required to register as a sexual offender pursuant to the Georgia Sexual Offender Registry Act (OCGA § 42-1-12).

## Defendants' Response to Sexual Abuse Allegations against Davis

117.    Following PLAINTIFF's report to law enforcement, Gregory Houser, a "Brother," (the term used for male members of Jehovah's Witnesses) who had regular access to Davis' home, disclosed to PLAINTIFF's mother that he repeatedly observed highly inappropriate behavior between Davis and PLAINTIFF.

118.    Houser told PLAINTIFF's mother that Davis was with PLAINTIFF alone in his bedroom with the door closed on more than one occasion, which was inappropriate because Bible study should be done in an open common area, such as the kitchen or living room.

119.    Houser also told PLAINTIFF's mother that he saw Davis ironing PLAINTIFF's clothes after making PLAINTIFF shower and washing his clothes at Davis' home—classic grooming behavior designed to create inappropriate intimacy and normalize boundary violations.

120.    Houser characterized Davis' conduct as "red flag behavior."

121.    PLAINTIFF's mother reported Houser's observations to the elders of the Cordele Congregation.

122.    Despite PLAINTIFF's mother's report of inappropriate private contact between an adult male and PLAINTIFF, a minor child, Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION took no action to protect PLAINTIFF, conducted no meaningful investigation, and did nothing to prevent Davis having contact with PLAINTIFF.

123.    Instead, Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION, through the elders from the Cordele Congregation repeatedly reminded PLAINTIFF's mother that Jehovah's Witnesses do not take legal action against one another.

124.    Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION, through the elders and congregants of the Cordele Congregation, forced PLAINTIFF and PLAINTIFF's mother to meet with Regina Jefferson (Davis' mother) on at least three occasions, told PLAINTIFF's mother to

practice forgiveness, and asked PLAINTIFF's mother to make peace with Regina Jefferson and her family.

125.    Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION, through the elders and congregants of the Cordele Congregation, met with PLAINTIFF alone on at least one occasion, and encouraged him to show forgiveness toward Davis and to become more active in the Cordele Congregation.

126.    Following Davis' arrest and indictment, Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION, through the elders of the Cordele Congregation permitted Davis to attend religious services online via Zoom where PLAINTIFF was also present, despite concerns raised by PLAINTIFF's mother.

127.    Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION and the elders and congregants of the Cordele Congregation, including but not limited to Elder Daniel and Brother Houser, possessed actual knowledge that Davis posed a danger, yet despite this knowledge, Defendants allowed Davis to maintain privileges, including leading prayers, holding field service groups on Zoom, and conducting Bible readings on stage.

128.    Upon information and belief, Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION conducted no investigation into PLAINTIFF's allegations.

129.    Upon information and belief, GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION took no

steps to prevent future instances of sexual abuse between Idle Teachers and minor congregants at their congregations, including the Cordele Congregation.

## Plaintiff's Severe Emotional Trauma and Damages

130.    PLAINTIFF suffered significant physical injuries as a result of the sexual abuse he suffered as a child.

131.    PLAINTIFF has suffered and will continue to suffer severe emotional trauma as a result of the sexual abuse he suffered as a child, as well as Defendant's conduct in this matter.

132.    As a direct and proximate result of the wrongful conduct alleged herein, PLAINTIFF has suffered physical injury, shock, severe emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, loss of enjoyment of life, loss of past and future earnings; was prevented and will continue to be prevented from performing PLAINTIFF's daily activities and obtaining the full enjoyment of life; and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, and other damages, in an amount not yet ascertained.

## COUNT I
## NEGLIGENCE
### (As to all Defendants)

133.    PLAINTIFF realleges and incorporates into Count One the allegations set forth above, as if fully set forth herein.

134.    Defendants had special duties to protect minor PLAINTIFF when he was entrusted to their care and supervision by PLAINTIFF's mother.

135.    PLAINTIFF's care, welfare, and/or physical custody was temporarily entrusted to the Defendants.

136.    Defendants voluntarily accepted the entrusted care, welfare, and/or physical custody of PLAINTIFF. As such, Defendants had a duty to use reasonable care to protect PLAINTIFF from injury, in addition to their duty of ordinary care.

137.    Defendants had a duty to supervise and control Davis and to prevent him from sexually abusing children.

138.    Defendants had a duty to protect PLAINTIFF, and a duty to properly supervise PLAINTIFF, when PLAINTIFF was entrusted to Defendants' care.

139.    It was reasonably foreseeable that if Defendants did not adequately exercise or provide the duty of care owed to children in their care, including but not limited to PLAINTIFF, the children entrusted to Defendants' care would be vulnerable to sexual abuse by perpetrators, including Davis.

140.    At all times relevant herein, Defendants, and each of them, were negligent in failing to exercise reasonable care to protect PLAINTIFF, and other minors, who were members of, or participants in, activities at the Cordele Congregation, from the risk of sexual abuse by perpetrators, including Davis.

141.    As a direct and proximate cause of one or more of the foregoing negligent acts or omissions on the part of the Defendants, PLAINTIFF foreseeably sustained injuries as described in more detail above.

## COUNT II
## NEGLIGENT SUPERVISION
### (As to all Defendants)

142.    PLAINTIFF realleges and incorporates into Count Two the allegations set forth above, as if fully set forth herein.

143.    Defendants had a duty to provide reasonable supervision of all Idle Bible-study teachers, including Davis, who teach minor congregants.

144.    Defendants were negligent in their supervision of Davis, and breached their duty of care, through one or more of the following acts and/or failures:

a.    Permitting Bible study involving minors, including PLAINTIFF, to occur in a one-on-one capacity;

b.    Permitting Bible study involving minors, including PLAINTIFF, to occur without elders, other congregation leadership, parents, and/or other supervisors present;

c.    Failing to ensure that Bible study involving minors, including PLAINTIFF, be held in an open-door setting; and

d.    Failing to ensure that Davis did not conduct in-person Bible study with minors, including PLAINTIFF, after the COVID-19 safety measures prohibiting in-person contact were in place.

145.    Defendants, by and through their agents, servants, and/or employees, breached their duty of care to PLAINTIFF when Defendants knew or reasonably should have known Davis' dangerous and exploitive propensities toward minors and/or that Davis was an unfit agent, employee, and/or volunteer.

146.    Despite such knowledge, Defendants negligently failed to supervise Davis in the position of trust and authority as an Idle Teacher, and/or other authority figure, where he was able to commit acts of sexual abuse against the PLAINTIFF.

147.    By assigning Davis as PLAINTIFF's Idle Bible study teacher when Defendants knew or should have known of the foregoing risk factors, Defendants exposed PLAINTIFF to the foreseeable risk that Davis would sexually abuse PLAINTIFF.

148.    Defendants further failed to take reasonable measures to prevent future sexual abuse of minor children, including PLAINTIFF.

149.    As a direct and proximate cause of one or more of the foregoing negligent acts or omissions on the part of the Defendants, PLAINTIFF foreseeably sustained injuries as described in more detail above.

<b>COUNT III</b><br><b>NEGLIGENT HIRING AND RETENTION</b><br><b>(As to all Defendants)</b>

150.    PLAINTIFF realleges and incorporates into Count Three the allegations set forth above, as if fully set forth herein.

151.    Defendants had a duty to act reasonably in hiring and retaining employees, agents, and/or volunteers, including but not limited to Idle Bible study teachers and a duty to exercise reasonable care in its decision whether to retain employees, agents, and/or volunteers.

152.    At all times relevant herein, Defendants had a duty to not hire, select, retain, and/or permit Idle Bible study teachers who posed an unreasonable risk of harm to their minor congregants, including PLAINTIFF.

153.    At all relevant times herein, Defendants knew or should have known that Davis posed a particular unfitness to be an Idle Bible study teacher, and more specifically, to be assigned as PLAINTIFF's Idle Bible study teacher, so as to create a danger of harm to others, including PLAINTIFF.

154.    Davis' particular unfitness, of which the Defendants knew or should have known, included that he posed a risk of sexual abuse to minor children whom he instructed.

155.    Davis' particular unfitness—that he posed a risk of sexual abuse to children to whom he taught Bible study—was the proximate cause of PLAINTIFF's injuries as described above.

156.    Davis' particular unfitness—that he posed a risk of sexual abuse to children to whom he taught Bible study—would have rendered the risk of harm to PLAINTIFF, including sexual abuse, reasonably foreseeable to someone in Defendants' position as of the time that Defendant's assigned Davis to be PLAINTIFF's Bible study teacher, based on the following (and as alleged in more detail above):

a.    Failing to conduct a background investigation into Davis prior to permitting him to be an Idle Bible Study teacher for minor congregants, including PLAINTIFF; and

b.    Failing to ensure that Davis did not conduct in-person Bible study with minors, including PLAINTIFF, after the COVID-19 safety measures prohibiting in-person contact were in place.

157.    By assigning Davis to be PLAINTIFF's Idle Bible study teacher when the Defendants knew or should have known of the foregoing risk factors, Defendants exposed PLAINTIFF to the foreseeable risk that Davis would place PLAINTIFF in danger, including sexually abusing PLAINTIFF.

158.    As a direct and proximate cause of one or more of the foregoing negligent acts or omissions on the part of the Defendants, PLAINTIFF foreseeably sustained injuries as described in more detail above.

**COUNT IV**
**NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE**
**(As to all Defendants)**

159.    PLAINTIFF realleges and incorporates into Count Four the allegations set forth above, as if fully set forth herein.

160.    Defendants had a duty to warn PLAINTIFF, PLAINTIFF's mother, and other parents and guardians of minor congregants at congregations, including the Cordele Congregation, about the risk of sexual abuse by congregants and volunteers, including Bible study teachers, including, but not limited to following:

    a.   Defendants had a duty to educate and train their congregants, including PLAINTIFF and PLAINTIFF's mother, regarding appropriate boundaries between adult Bible study teachers and minor students;

    b.   Defendants had a duty to implement and enforce policies to protect minor congregants from sexual abuse, including policies regarding one-on-one contact between adults and minors; and

    c.   Defendants had a duty to otherwise inform congregants about how to avoid the risk of sexual abuse.

161.    Defendants knew or should have known of Davis' dangerous and exploitive propensities and particular unfitness to serve as an Idle Bible study teacher for minor children.

162.    Defendants breached their duty of care to congregants, including PLAINTIFF by:

    a.   Failing to warn PLAINTIFF, PLAINTIFF's mother, or other parents and guardians about Davis' propensities and the risk he posed to minor children;

    b.   Failing to adequately train congregation leadership, including elders, on how to identify, prevent, and respond to child sexual abuse within the congregation;

c.  Failing to educate parents and guardians, including PLAINTIFF's mother, about warning signs of child sexual abuse and appropriate safeguards when minors receive Bible instruction;

d.  Failing to implement or enforce adequate policies to prevent one-on-one contact between adult Bible study teachers and minor students, particularly in private settings without parental or leadership supervision.

163.    As a direct and proximate cause of one or more of the foregoing negligent acts or omissions on the part of the Defendants, PLAINTIFF foreseeably sustained injuries as described in more detail above.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF respectfully requests that the Court enter an order:

a.      Granting judgment in favor of PLAINTIFF and against Defendants;

b.      Awarding PLAINTIFF compensatory and punitive damages, in a sum to be determined by the jury at trial;

c.      Declaring that Defendants' misconduct as described herein is unlawful;

d.      Reasonable costs to PLAINTIFF as provided by law; and

e.      Awarding PLAINTIFF such additional relief, whether in law or in equity, as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

This the 13th day of February 2026.

Respectfully submitted,

<u>s/John C. Cotton</u>
John C. Cotton
Georgia Law Team, P.C.
Post Office Box 897
Cordele, Georgia 31010-0897
Telephone: 229.273.9490
Facsimile: 229.279.9491
State Bar No. 189801
craig@galawteam

Counsel for Plaintiff certifies that his pleading complies with Local Rule 5.1(B).