**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**

|  |  |
|---|---|
| JOHN DOE,<br>    Plaintiff,<br>v.<br>**JEHOVAH'S WITNESSES GOVERNING BODY,** a business and/or religious entity, **THE WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.,** a corporation, **THE WATCHTOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA,** a corporation, **THE WATCHTOWER BIBLE AND TRACT SOCIETY OF FLORIDA, INC.,** a corporation, **and CHRISTIAN CONGREGATION OF JEHOVAH'S WITNESSES,** a corporation.<br>Defendants. | Case No.: 1:26-cv-23 |

**DEFENDANTS WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.; WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA; WATCHTOWER BIBLE AND TRACT SOCIETY OF FLORIDA, INC.; and CHRISTIAN CONGREGATION OF JEHOVAH'S WITNESSES MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants Watchtower Bible and Tract Society of New York, Inc. ("Watchtower NY"), Watch Tower Bible and Tract Society of Pennsylvania, ("Watch Tower PA"), Watchtower Bible and Tract Society of Florida, Inc. ("Watchtower FL"), and Christian Congregation of Jehovah's Witnesses ("CCJW") (collectively, "Moving Defendants"[1]), respectfully move this Court pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss Plaintiff's Complaint as to the Moving Defendants. Defendant Jehovah's Witnesses Governing Body ("Governing Body"), a non-jural entity, is named as a defendant but has not been served in this action. In support hereof, Moving Defendants state as follows:

---

[1] Three Moving Defendants are incorrectly named in the Complaint as "The Watchtower Bible and Tract Society of New York, Inc.; The Watchtower Bible and Tract Society of Pennsylvania; and The Watchtower Bible and Tract Society of Florida." (ECF No. 1.)

1

## **INTRODUCTION**

Plaintiff John Doe alleges that a perpetrator, who was arrested very shortly after Plaintiff reported the abuse, and who is now incarcerated, repeatedly sexually abused Plaintiff as a minor. Plaintiff seeks to hold the Moving Defendants responsible for the perpetrator's criminal conduct under theories of negligence, negligent supervision, negligent hiring and retention, and negligent failure to warn, train, or educate.

The Complaint suffers from multiple fundamental legal deficiencies that warrant dismissal. *First*, this Court lacks personal jurisdiction over the Moving Defendants because Plaintiff fails to allege that any of them engaged in activity in Georgia as required under the Georgia Long-Arm Statute, and none of the Moving Defendants is at home in Georgia or purposefully directed any activity to Georgia with respect to Plaintiffs' claims as required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Second*, the Complaint fails to state a claim upon which relief can be granted because: (a) the Complaint is a shotgun pleading that impermissibly treats the Moving Defendants – four separate corporate or organizational entities – and the religious Governing Body as a single undifferentiated enterprise; (b) the Complaint's conclusory allegations of agency against the Moving Defendants fail to establish a plausible vicarious liability theory; (c) Plaintiff fails to plead sufficient facts to support any negligence claim; and (d) the First Amendment's ecclesiastical abstention doctrine bars adjudication of claims that would require the Court to evaluate the adequacy of Defendants' religious governance, supervision, and discipline of someone Plaintiff claims was a religious instructor.

## PLAINTIFF'S FACTUAL ALLEGATIONS AND CLAIMS[2]

According to the Complaint, Plaintiff was a member of the Cordele Congregation, an unincorporated congregation of Jehovah's Witnesses in Cordele, Georgia. (ECF No.. 1, ¶¶ 79-80, 83). The Cordele Congregation is a non-party "locally managed by a 'Body of Elders'" who have "day-to-day authority over training, and placement of all ministerial servants within the congregation[]." (*Id.*, ¶¶ 48, 52).

Plaintiff alleges that Davis became a member of the Cordele Congregation in 2017 or 2018 and participated in Bible study instruction "even though he was not a ministerial servant." (*Id.*, ¶¶ 84-87). Although salient facts will be disproven, the Complaint alleges that Davis was assigned by the elders of the Cordele Congregation as Plaintiff's Bible study teacher. (*See id.*, ¶ 91). Between approximately August 2019 and January 2022, Lorenza Davis sexually abused Plaintiff "on more than one hundred occasions" at his home, Davis's home, and Davis's vehicle. (*Id.*, ¶¶ 95, 98). In 2024, Davis pleaded guilty to two counts of aggravated child molestation and was sentenced to 60 years' imprisonment. (*Id.*, ¶¶ 12, 115).

The Complaint names five Defendants, none of which is alleged to be incorporated in Georgia, to do business in Georgia, or to have its principal place of business in Georgia. (*Id.*, ¶¶ 6-10). The Governing Body is described as "a business and/or religious entity" conducting business and headquartered in New York. (*Id.*, ¶ 6). Watchtower NY is a New York corporation (Exhibit A) with a principal address in New York. (*Id.*, ¶ 7). Watch Tower PA is a Pennsylvania corporation with a principal address in New York. (*Id.*, ¶ 8). Watchtower FL is a Florida corporation with a

---

[2] Moving Defendants recite Plaintiff's factual allegations and claims as pleaded for purposes of this motion to dismiss, do not admit to any such allegations and claims, and hereby reserve and preserve any and all factual and legal defenses to such allegations and claims.

principal address in New York. (*Id.*, ¶ 9). CCJW is a New York corporation (Exhibit B) with a principal address in New York. (*Id.*, ¶ 10).

The Complaint asserts four counts: (1) Negligence (*Id.*, ¶¶ 133-141); (2) Negligent Supervision (*Id.*, ¶¶ 142-149); (3) Negligent Hiring and Retention (*Id.*, ¶¶ 150-158); and (4) Negligent Failure to Warn, Train, or Educate (*Id.*, ¶¶ 159-163). Each count is asserted generally against all Defendants, without distinguishing among them. (*Ibid.*) More broadly, the Complaint draws no factual distinctions whatsoever among the Defendants.

<u>**ARGUMENT & AUTHORITIES**</u>

**I.      This Court Lacks Personal Jurisdiction over the Moving Defendants.**

**A.      Standard of Review**

When a defendant challenges personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing a prima facie case that jurisdiction exists. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). The court may consider the parties' submissions, including affidavits, in determining the jurisdictional question. Where the plaintiff's allegations are challenged, the court must not credit conclusory assertions but must examine whether the plaintiff has alleged sufficient facts establishing jurisdiction. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).

**B.      Plaintiff Fails to Allege Minimum Contacts by Any Moving Defendant.**

Personal jurisdiction in this case involves a two-part inquiry. First, it must be appropriate under Georgia's Long-Arm Statute, and second, it must be appropriate under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Diamond Crystal Brands, Inc. v. Food Movers Int'l*, 593 F.3d 1249, 1259 (11th Cir. 2010). Both inquiries into personal jurisdiction fail as to Moving Defendants.

### 1. Personal jurisdiction is not appropriate under Georgia's Long-Arm Statute.

For Moving Defendants to be subject to the exercise of personal jurisdiction in Georgia, this Court must "find that at least one prong of the [Georgia] long-arm statute is satisfied." *Diamond Crystal,* 593 F.3d at 1260. In pertinent part, Georgia's Long-Arm Statute allows personal jurisdiction

> over any nonresident … if in person or through an agent, he or she: (1) Transacts any business with this state; (2) Commits a tortious act or omission within this state...; (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; [or] (4) Owns, uses, or possesses any real property situated within this state....

O.C.G.A. § 9-10-91(1)-(4).

The Complaint does not allege that any Moving Defendant directly transacted any business in Georgia, committed any tortious act or omission in Georgia, committed any tortious injury in Georgia caused by an act or omission outside Georgia that would be substantiated by the regular contacts with Georgia as contemplated by subsection (3), or has any property in Georgia. (*See generally* ECF No. 1, and ¶¶ 6-10). While the Complaint alleges that Davis was an agent of the Moving Defendants (ECF No. 1, ¶ 86), as explained below, the Complaint contains no facts to support that legal conclusion.

### 2. Personal jurisdiction is not appropriate under the Due Process Clause.

Even if the Georgia Long-Arm Statute is satisfied here, which it is not, the exercise of personal jurisdiction must also comply with the Due Process Clause of the Fourteenth Amendment. *Diamond Crystal*, 593 F.3d at 1259. As the Eleventh Circuit has explained, the "heart of [the Due Process Clause's] protection is fair warning – the Due Process Clause requires 'that the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being

haled into court there.'" *Id*. at 1267 (quoting *Burger King Co. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "Therefore, states may exercise jurisdiction over only those who have established 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Diamond Crystal* 593 F.3d at 1267 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). There are two bases for exercising personal jurisdiction consistent with due process: general jurisdiction and specific jurisdiction. *See Id*. The Complaint fails to satisfy either.

### a.    The Complaint fails to allege general jurisdiction.

General jurisdiction exists only where a defendant's affiliations with the forum state are "so 'continuous and systematic' as to render [it] essentially at home" in that state. *Daimler AG v. Bauman*, 571 U.S. 117, 119, 139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Supreme Court has identified two bases for general jurisdiction over a corporation – its state of incorporation and its principal place of business. *Id*. at 137. An out-of-state corporation may be subject to general jurisdiction in another forum only in the "exceptional case" where its operations are "so substantial and of such a nature as to render the corporation at home in that State." *Id*. at 139 n.19.

No Moving Defendant is incorporated in Georgia or maintains a principal place of business in Georgia. (ECF No. 1, ¶¶ 7-10). The Complaint does not allege any facts suggesting that any Moving Defendant's affiliations with Georgia are so continuous and systematic to render it "at home" in Georgia. There can be no basis for general personal jurisdiction over any Moving Defendant.

6

**b.   The Complaint fails to allege specific jurisdiction.**

Specific jurisdiction requires that the defendant has "'purposefully avail[ed]' itself of the privilege of conducting activities" in the forum state and that there be "a sufficient nexus between those contacts and the litigation." *Diamond Crystal*, 593 F.3d at 1267. If the plaintiff establishes purposeful availment and a sufficient nexus, the burden shifts to the defendant to make "a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id*. Critically, the minimum contacts inquiry focuses on "the relationship among the defendant, the forum, and the litigation," and a defendant may not be haled into court on "'random, fortuitous, or attenuated' contacts [it] makes by interacting with other persons affiliated with the State." *Walden v. Fiore,* 571 U.S. 277, 286, 287 (2014) (quoting *Burger King*, 471 U.S. at 475).

The Complaint does not allege any Moving Defendant purposefully availed itself of the privilege of conducting activities in Georgia. Nor does the Complaint allege any of Plaintiff's claims "arise out of or relate to" any Moving Defendant's own contacts with Georgia. *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 582 U.S. 255, 262 (2017).

Plaintiff's claims arise exclusively from the perpetrator Davis's conduct as an alleged Bible teacher and member of the Cordele Congregation. While the Complaint alleges that Davis was an agent of the Moving Defendants (ECF No. 1, ¶ 86), the Complaint contains no facts to support that legal conclusion. The Complaint does not allege that the Moving Defendants were even aware of Davis or his interactions with Plaintiff.

The Complaint attempts to fill this jurisdictional void by alleging a "hierarchical" organizational structure among the Moving Defendants and asserting that they established policies for local congregations and exercised supervision through "Circuit Overseers." (*See generally* ECF

No. 1, and ¶¶ 27-53). But allegations of organizational structure and policy setting, without more, are insufficient to impute a local entity's contacts to an out-of-state affiliate for purposes of jurisdiction. In *Brandenburg v. City of Vidalia*, 366 Ga. App. 51, 62 (2022), for example, the court held that the presence of an independent contractor or affiliated entity in Georgia cannot be attributed to an out-of-state principal absent evidence of an agency relationship with the right to control day-to-day operations. Likewise, the Eleventh Circuit has recognized that one entity's contacts may be imputed to another for jurisdictional purposes only where the local entity "manifests no separate corporate interests of its own and functions solely to achieve the purpose of the dominant corporation." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1273 (11th Cir. 2002); *see also Consol. Dev. Corp.*, 216 F.3d at 1292.

The Complaint's allegations of hierarchical structure and policy-setting are insufficient to establish the level of control necessary to impute the perpetrator's or Cordele Congregation's contacts to the Moving Defendants. In fact, the Complaint's allegations conflict with any such theory as it expressly acknowledges that the Cordele Congregation is "locally managed by a 'Body of Elders'" (ECF No. 1, ¶ 48) and otherwise implausibly alleges that the Moving Defendants acted "through the elders of the Cordele Congregation" (*see id.*, ¶¶ 89-92). Again, there is no factual allegation that the Moving Defendants had any involvement in the underlying facts or were even aware of them, much less that the Moving Defendants controlled or directed the local elders with respect to the alleged facts as would be required for the exercise of personal jurisdiction. *See Waite v. AII Acquisition Corp.*, 901 F.3d 1307, 1318 (11th Cir. 2018) (the minimum contacts inquiry must focus on the defendant's own contacts with the forum, not contacts attributable to third parties).

Moreover, the Complaint's jurisdictional allegations are conclusory in nature and are not entitled to the assumption of truth. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  The Complaint relies heavily on allegations made "upon information and belief" regarding Moving Defendants' purported control over local congregations—conclusory allegations that even if true, which they are not, do not establish the specific minimum contacts required for personal jurisdiction. (ECF No. 1, ¶¶ 20, 22, 24, 29-30, 32, 47-48, 52-54, 56-57, 59, 69, 72-76, 78, 87, 89-90, 92, 94, 97, 107, 128-129). The Complaint fails to allege any act by a Moving Defendant directed at Georgia that gave rise to Plaintiff's claims. Instead, it uniformly attributes all conduct to "Defendants" collectively, never distinguishing what any Moving Defendant did or directed to be done in Georgia.

Because the Complaint fails to establish general or specific personal jurisdiction over any Moving Defendant consistent with the Due Process Clause of the Fourteenth Amendment, the Complaint should be dismissed as to all Moving Defendants for lack of personal jurisdiction.

## II.    Plaintiffs' Claims Fail as a Matter of Law.

### A.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not suffice. Threadbare recitals of elements supported by conclusory statements are insufficient. The Eleventh Circuit has consistently applied this standard, requiring more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* at 678.

9

**B.    The Complaint Is a Shotgun Pleading that Impermissibly Disregards Corporate Separateness.**

The Complaint clearly violates the Eleventh Circuit's prohibition against impermissible shotgun pleading because it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). The Complaint names five separate corporate or organizational defendants, bringing each of its four counts against "all Defendants" collectively, and treating them as a unified enterprise without alleging facts to support disregarding their corporate separateness. The Complaint repeatedly uses the phrase "Defendants GOVERNING BODY, WATCHTOWER NY, WATCHTOWER PA, WATCHTOWER FL, and/or CHRISTIAN CONGREGATION" without distinguishing the specific conduct or liability among them. This pleading approach renders it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" as to each defendant. *Id*. at 1325. This is a fatal deficiency under Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and Fed. R. Civ. P. 10(b), which allows each defendant to discern the specific conduct alleged against it. *See Barmapov v. Amuial*, 986 F.3d 1321, 1324-25 (11th Cir. 2021) (reaffirming that shotgun pleadings are "flatly forbidden" because they deprive defendants of adequate notice of the claims and the grounds upon which each claim rests); *see also Hodges-Johnson v. Belcher*, 564 F. Supp. 3d 1334, 1342 (N.D. Ga. Sept. 29, 2021).

Because the Complaint improperly disregards the separate corporate entities of Moving Defendants, no Defendant can discern how any count applies to it. Under Georgia law and federal law, separate corporate entities are presumed to have separate legal existence. *Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*, 604 U.S. 321, 327 (2025) ("[I]t is long settled as a matter of American

10

corporate law that separately incorporated organizations are separate legal units with distinct legal rights and obligations.") (quoting *Agency for Int'l Development* v. *Alliance for Open Society Int'l Inc.*, 591 U. S. 430, 435 (2020)). And Plaintiff has not alleged any facts that would support any Moving Defendant having liability for the acts of another. *See Lowery v. Noodle Life, Inc.*, 363 Ga. App. 1, 3 (Ga. App. 2022).

Each Defendant is entitled to be apprised of the specific claims against it. The Complaint's treatment of all Defendants as a single undifferentiated entity fails to provide adequate notice and fails to state a claim against any particular Defendant.

### C.    The Complaint Fails to Plead a Plausible Agency Relationship or Basis for Vicarious Liability.

The Complaint repeatedly alleges that Davis was an "actual and/or apparent agent, servant and/or employee" of each of the Defendants without alleging any facts that support that legal conclusion. Conclusory "information and belief" allegations that lack any supporting factual basis do not satisfy the plausibility standard. *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013).

Courts have specifically addressed—and rejected—the theory that a local congregant of Jehovah's Witnesses is an agent of an organizational entity. In *Gillet v. Watchtower Bible & Tract Society of Pennsylvania, Inc.*, 913 So. 2d 618, 620 (Fla. Dist. Ct. App. 2005), the court found that a congregant who committed tortious acts was not an agent of the Watchtower entities. The same result should follow here, where the Complaint alleges only conclusory agency labels without any factual allegations to support an agency relationship.

Even assuming the Complaint adequately alleged an agency relationship—which it does not—Plaintiff's vicarious liability theory independently fails as a matter of Georgia law. The Georgia Supreme Court has squarely held that sexual misconduct committed for personal reasons is "entirely disconnected from the scope of [the perpetrator's] employment...." *Piedmont Hospital,*

*Inc. v. Palladino*, 276 Ga. 612, 614 (2003). The Eleventh Circuit has applied this principle to hold that an employer cannot be liable under respondeat superior for sexual misconduct "when the alleged acts were not taken in furtherance of the employer's business and were outside the scope of employment." *Doe v. Fulton-DeKalb Hospital Authority*, 628 F.3d 1325, 1333 (11th Cir. 2010).

Davis's alleged sexual abuse of Plaintiff was not in furtherance of any Defendant's mission or within any scope of authority. By Plaintiff's own account, the abuse occurred at Davis's home, in Davis's car, and at Plaintiff's home—not at any church facility or during any authorized religious activity. Accordingly, the Complaint's vicarious liability theory is foreclosed by binding Georgia precedent.

**D.      The Complaint Fails to State a Claim for Any of the Four Negligence Counts.**

The Complaint asserts four counts against Defendants: negligence (Count I), negligent supervision (Count II), negligent hiring and retention (Count III), and negligent failure to warn, train, or education (Count IV). (ECF No. 1, ¶¶ 133-163). "[T]he threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care," and that question is one of law. *Reg'l Fin. Co. of Ga., LLC v. Pearson,* 373 Ga. App. 388, 390 (2024); O.C.G.A. § 51-1-2.

For claims of negligent hiring or retention, O.C.G.A. § 34-7-20 imposes a duty on an employer "to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency." *See Munroe v. Universal Health Servs., Inc.*, 277 Ga. 861, 862 (2004). An employer may be liable for negligently hiring or retaining an employee only where there is sufficient evidence the employer reasonably knew or should have known of the employee's tendencies to engage in certain behavior relevant to the plaintiff's injuries. *Id.*, at 863 (holding that the employer must have disregarded indications of a propensity to inflict harm that should have

aroused suspicion and prompted investigation). The same knowledge requirement applies to negligent training, supervision, and retention claims. *See Doe v. St. Joseph's Catholic Church*, 313 Ga. 558, 566 (2022) ("[C]laims against the Church for negligent training, supervision, and retention each require a showing that the Church had actual or constructive knowledge of the danger that resulted in [plaintiff's] injury....). Negligent failure to warn claims are analyzed under the general negligence framework. *See generally Allen v. Zion Baptist Church*, 328 Ga. App. 208, 216 (2014) (analyzing negligent failure to warn alongside other negligence claims under identical elements of duty, breach, proximate causation, and damages).

Plaintiffs' allegations do not come close to establishing that the Moving Defendants had any awareness of Davis or that he was interacting with Plaintiff as a Bible teacher, much less that Davis had any propensities toward sexual abuse. The only allegations Plaintiff advances to support such propensities are entirely speculative, and Plaintiff neither sued the local congregation nor identified the elder who allegedly assigned Davis to a position of teacher.

Specifically, the Complaint alleges that Davis was previously conducting Bible study with a minor at another congregation but "suddenly stopped without explanation," (ECF No. 1, ¶ 75); there is no allegation that any improper conduct occurred, that any report was made, or that any Defendant had knowledge of whatever supposedly happened there. The allegation that an elder of the Cordele Congregation voted against Davis becoming a ministerial servant because "he knew something was wrong with him," (ECF No. 1, ¶ 88), is ambiguous and vague, does not suggest a propensity for sexual abuse, and certainly does not indicate that any Defendant should have had knowledge that Davis would harm Plaintiff. The alleged failure to conduct a background check (ECF No. 1, ¶ 89), standing alone, is insufficient absent allegations that such a check would have

13

revealed relevant propensity. *See Munroe*, 277 Ga. at 866 (granting summary judgment where background check did not reveal indications of propensity to inflict harm).

Another congregant's observations of "highly inappropriate behavior between Davis and Plaintiff" – which were disclosed only after Plaintiff reported the abuse to law enforcement in February 2022 (ECF No. 1, ¶ 117) – cannot retroactively establish that Defendants knew or should have known of Davis's propensity before the abuse occurred. The relevant inquiry under Georgia's negligent supervision standard is whether the employer had pre-tort knowledge of the employee's dangerous propensities. *See Munroe*, 277 Ga. at 863. No such basis is alleged.

Nor do the Complaint's COVID-19 enforcement allegations establish the requisite knowledge. (ECF No. 1, ¶ 106). Even accepting that elders addressed Davis regarding violations of pandemic-related safety protocols, knowledge that a congregant continued to meet with a student for Bible study in person does not give rise to an inference that the congregant was sexually abusing the student. Georgia law requires knowledge of the specific propensity at issue—here, a propensity for sexual abuse of minors—not merely knowledge that an individual was present with a minor. *See Munroe, 277 Ga. at 863*.

Finally, the Complaint's allegations regarding the post-abuse response of congregation elders are irrelevant to whether Defendants knew or should have known of Davis's propensity for abuse *before* the abuse occurred. Again, after-the-fact conduct cannot retroactively supply the pre-tort knowledge required to state a claim for negligence under Georgia law. *See Munroe*, 277 Ga. at 863; *see Poole v. N. Ga. Conf. of the Methodist Church, Inc.*, 273 Ga. App. 536, 537 (2005) ("[A]bsent a causal connection between the employee's particular incompetency for the job and the injury sustained by the plaintiff, the defendant employer is not liable....")

14

Because each of the Complaint's four negligence claims fails to allege a sufficient factual basis for imposition of a legal duty on the Moving Defendants, the Complaint should be dismissed pursuant to Rule 12(b)(6).

### E.  The First Amendment's Ecclesiastical Abstention Doctrine Bars Plaintiff's Claims.

The First Amendment's Religion Clauses prohibit civil courts from resolving disputes that would require interpretation of religious doctrine, church law, policies, or practices. Courts have developed two related doctrines: the ministerial exception, which bars employment disputes involving ministers, and the broader ecclesiastical abstention doctrine, which bars claims requiring inquiry into religious governance.[3]

In *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171 (2012), the Supreme Court recognized that the First Amendment bars government interference with a religious organization's selection and management of its ministers. *See also Gellington v. Christian Methodist Episcopal Church, Inc.*, 203 F.3d 1299 (11th Cir. 2000). While the ministerial exception applies primarily to employment discrimination claims, the broader church autonomy doctrine protects religious institutions' internal governance decisions.

In affirming the dismissal of professional negligence claims against a pastor, the Seventh Circuit noted plaintiff failed to adequately allege that the pastor's counseling was not part of

---

[3] Some courts have held that the ecclesiastical abstention doctrine does not bar all tort claims against religious organizations. *See Konkle v. Henson*, 672 N.E.2d 450, 455 (Ind. Ct. App. 1996), *see e.g., Malicki v. Doe*, 814 So. 2d 347, 360 (Fla. 2002). But those cases involved claims that could be adjudicated under neutral principles of tort law without reference to religious doctrine. Here, by contrast, the Complaint's negligence claims are inextricably intertwined with questions of religious governance—how Bible study teachers should be selected, what supervision is appropriate for religious instruction, and whether the organization's internal disciplinary procedures were adequate.

religious practice, and that the free exercise clause of the First Amendment was implicated. *Dausch v. Rykse,* 52 F.3d 1425 (7th Cir. 1994); *see L.L.N. v. Clauder*, 209 Wis. 2d 674 (1997) (barring negligent supervision claims against a religious diocese because they would require a court to develop a "reasonable cleric" standard of care involving interpretation of church canons and internal policies); *see also D.T. v. Catholic Diocese of Kansas City-St. Joseph*, 419 S.W.3d 143, 147 (Mo. Ct. App. 2013), (barring negligence claims against a diocese because they would require evaluating religious doctrine and policies, holding that "[a]djudicating the reasonableness of a church's supervision of a cleric—what the church 'should know'—requires inquiry into religious doctrine.")

The Complaint's negligence claims require precisely the type of entangling inquiry these courts have held are prohibited by the First Amendment. The Complaint demands that this Court evaluate: (a) how Jehovah's Witness Bible study teachers should be selected—a matter of religious instruction and governance; (ECF No. 1, ¶ 73, 89); (b) what training and supervision is appropriate for religious instruction—a matter of ecclesiastical practice; (ECF No. 1, ¶¶ 90-92); (c) whether the "two-witness" policy for investigating misconduct was reasonable—a policy the Complaint acknowledges is rooted in religious doctrine, (ECF No. 1, ¶¶ 62-65); and (d) whether the Defendants' internal disciplinary procedures, including disfellowship, were adequate, (ECF No. 1, ¶¶ 66-67) —matters of religious discipline.

These inquiries necessarily implicate religious doctrine, governance, and ecclesiastical practice. To adjudicate Plaintiff's claims, the Court would be required to determine what constitutes a "reasonable" standard of care for the supervision of a Bible study teacher within a religious congregation—precisely the type of "reasonable cleric" standard that the *L.L.N.* court held would violate the First Amendment.

16

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court enter an order dismissing the Complaint as to the Moving Defendants for lack of personal jurisdiction pursuant to Rule 12(b)(2) or, in the alternative, dismissing the Complaint as to the Moving Defendants for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

Respectfully submitted this 7th day of May 2026.

*/s/ Jordan E. Dailey*
Jordan E. Dailey, Georgia Bar No. 873862
Wesley B. Gilchrist, *pro hac vice forthcoming*
Rachel M. Lary, *pro hac vice forthcoming*

Lightfoot, Franklin & White, LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Phone: (205) 581-0700
jdailey@lightfootlaw.com
wgilchrist@lightfootlaw.com
rlary@lightfootlaw.com

*/s/ F. Faison Middleton, IV*
F. Faison Middleton, IV, Georgia Bar No. 504745

Watson Spence LLP
Post Office Box 2008
Albany, Georgia 31702-2008
(229) 436-1545 Telephone
(229) 436-6358 Facsimile
fmiddleton@watsonspence.com

*Counsel for Defendants Watchtower Bible and Tract Society of New York, Inc., Watch Tower Bible and Tract Society of Pennsylvania, Watchtower Bible and Tract Society of Florida, Inc., and Christian Congregation of Jehovah's Witnesses*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of May, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send electronic notification to all counsel of record.

*Jordan E. Dailey*
OF COUNSEL

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.4, I certify that this brief does not exceed twenty (20) pages in length.

*Jordan E. Dailey*
OF COUNSEL