# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA

JOHN DOE,

      Plaintiff,

    v.

JEHOVAH'S WITNESSES GOVERNING
BODY, a business and/or religious entity, THE
WATCHTOWER BIBLE AND TRACT
SOCIETY OF NEW YORK, INC., a corporation,
THE WATCHTOWER BIBLE AND TRACT
SOCIETY OF PENNSYLVANIA, a corporation,
THE WATCHTOWER BIBLE AND TRACT
SOCIETY OF FLORIDA, INC., a corporation,
and CHRISTIAN CONGREGATION OF
JEHOVAH'S WITNESSES, a corporation,

      Defendants.

DISTRICT JUDGE LESLIE ABRAMS
GARDNER

CASE NO.: 1:26-CV-23-LAG

JURY DEMAND

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Now comes the Plaintiff, JOHN DOE, by and through his undersigned attorneys, and respectfully moves this Court to deny Defendants THE WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., THE WATCHTOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, INC., THE WATCHTOWER BIBLE AND TRACT SOCIETY OF FLORIDA, INC., and CHRISTIAN CONGREGATION OF JEHOVAH'S WITNESSES (Defendants).[1] In support of this Motion, Plaintiff states as follows:

---

[1] Defendant JEHOVAH'S WITNESSES GOVERNING BODY (Defendant Governing Body) has evaded Plaintiff's attempts at service. Plaintiff previously moved this Court to grant his Motions for Alternate Service and Motion for Extension of Time of the 90-Day Summons Service Deadline. (ECF Nos. 16 and 21). This Court has not ruled on either motion as of the date of this filing.

1

## I.    INTRODUCTION

Defendants placed Lorenza Davis (Davis) in an unsupervised, one-on-one position of trust with Plaintiff, a minor child, where he served as Plaintiff's Bible study teacher. Between August 2019 and January 2022, Davis sexually abused Plaintiff more than one hundred times. Davis was convicted in 2024 of two counts of aggravated child molestation and sentenced to sixty years in prison. Plaintiff now seeks to hold Defendants accountable—not for their religious beliefs or ecclesiastical governance—but for their failures to (1) properly supervise Davis; (2) implement reasonable safety protocols; and (3) protect Plaintiff and other vulnerable children in their care.

Defendants' Motion to Dismiss mischaracterizes the Complaint, asks this Court to disregard established jurisdictional precedent, and attempts to use the First Amendment as a shield against accountability for negligent conduct. None of Defendants' arguments withstand scrutiny. This Court has personal jurisdiction over each Defendant based on their purposeful direction of organizational activities into Georgia through hierarchically controlled agents. The Complaint is not a shotgun pleading; it pleads specific conduct by a unified organizational enterprise. Finally, Plaintiff's claims require no interpretation of religious doctrine; they are governed entirely by the principles of Georgia tort law. For the reasons stated below, this Court should deny Defendants' Motion to Dismiss. In the alternative, if the Court finds any portion of the Complaint deficient, Plaintiff respectfully requests leave (1) to amend pursuant to Federal Rule of Civil Procedure 15(a)(2); and (2) to conduct jurisdictional discovery.

## II.    STATEMENT OF RELEVANT FACTS

Defendants operate as a hierarchically integrated organization whose authority flows downward from Defendant Governing Body through the Defendant Watchtower entities and Christian Congregation into local congregations. *See* ECF No. 1, ¶¶ 17-53. Defendant Governing Body approved the formation of the Defendant Christian Congregation (*id.* at ¶ 25), who, along with the Watchtower Defendants jointly establish all policies, procedures, and protocols for congregations throughout the United States, including the Cordele, Georgia congregation where Plaintiff was abused. *Id.* at ¶¶ 37-41. Defendants appoint Circuit Overseers who exercise direct supervisory authority over local elders. *Id.* at ¶¶ 42-46. Elders, in turn, have day-to-day authority over placing ministerial servants and volunteers. *Id.* at ¶¶ 48-52.

Defendants' agents assigned Davis as Plaintiff's one-on-one Bible study teacher beginning in August 2019 without any background check or training, upon information and belief. *Id.* at ¶¶ 89-91. A fellow elder—Davis' own uncle—voted against Davis becoming a ministerial servant because, he "knew something was wrong with him." *Id.* at ¶ 88. Davis had also abruptly and inexplicably left another congregation where he was conducting Bible study with a minor boy prior to his assignment to Plaintiff, a departure that was contrary to standard practice. *Id.* at ¶¶ 74-77.

Between August 2019 and January 2022, Davis sexually abused Plaintiff on more than one hundred occasions. *Id.* at ¶ 95. Even after Defendants' agents directly confronted Davis for violating COVID-19 rules by continuing in-person Bible study with Plaintiff, Defendants took no further action to remove Davis from access to Plaintiff. *Id.* at ¶¶ 106-109. After disclosure, Defendants allowed Davis to appear on Zoom worship services that Plaintiff attended and while criminal charges were pending. *Id.* at ¶ 126. Davis was convicted in 2024 and is now serving sixty years' imprisonment, the first twenty-seven years to be served in confinement. *Id.* at ¶ 115. Plaintiff

3

has suffered significant physical and emotional injuries because of the childhood sexual abuse from which Defendants failed to protect him. *Id*. at ¶¶ 130-132. The Complaint includes four claims against the Defendants: (1) Negligence (*id*., ¶¶ 133-141); (2) Negligent Supervision (*id*., ¶¶ 142-149); (3) Negligent Hiring and Retention (*id*., ¶¶ 150-158); and (4) Negligent Failure to Warn, Train, or Educate (*id*., ¶¶ 159-163).

### III.    THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

#### A.  Standard of Review

Where a defendant challenges personal jurisdiction pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(2) and the court does not conduct an evidentiary hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). All uncontroverted allegations in the complaint must be taken as true, and any factual conflicts must be resolved in the plaintiff's favor. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1363-64 (11th Cir. 2021) (quoting *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1257-58 (11th Cir. 2010)). As described below, the exercise of jurisdiction over the Defendants is appropriate under Georgia's Long-Arm Statute and does not violate the Due Process Clause of the Fourteenth Amendment.

#### B.  The Georgia Long-Arm Statute Is Satisfied.

Georgia's Long-Arm Statute, O.C.G.A. § 9-10-91, confers personal jurisdiction over any nonresident who, directly or through an agent, "[c]ommits a tortious act or omission within this

state" or "[c]ommits a tortious injury in this state caused by an act or omission outside this state" while regularly doing business or engaging in a persistent course of conduct in Georgia. O.C.G.A. § 9-10-91(2)-(3).

The Complaint alleges that Defendant Governing Body is the governing body of the national congregation of Jehovah's Witnesses and provides direction for Jehovah's Witnesses worldwide. *See* ECF No. 1 at ¶ 17. At all times relevant, the Cordele Congregation was a local Kingdom Hall of the Jehovah's Witnesses. *Id*. at ¶ 79. Defendants, acting through their duly appointed agents—Circuit Overseers and local elders of the Cordele Congregation—placed Davis in an unsupervised position with Plaintiff, a minor child, in Georgia, failed to conduct background checks in Georgia, failed to warn Plaintiff's mother in Georgia, and failed to remove Davis from access to Plaintiff in Georgia even after known violations of safety rules. *Id*. at ¶¶ 70-73, 79-94. These are tortious acts committed within this state through Defendants' own agents. *Id*. Defendants jointly established the policies that created the conditions for abuse and jointly supervised the agents who carried them out. *Id.* at ¶¶ 37-53, 57, 60-69. Therefore, Georgia's Long-Arm Statute is satisfied under subsection (2) because the tortious acts alleged in the Complaint were committed by Defendants' agents in Georgia. *See Exceptional Marketing Group, Inc. v. Jones*, 749 F.Supp.2d 1352, 1363 (11th Cir. 2010). To the extent that Defendants' creation of the policies that created the conditions for Plaintiff's abuse occurred outside of Georgia, Plaintiff has also satisfied Georgia's Long-Arm Statute under subsection (3) because the Complaint sufficiently alleges that Defendants engaged in a persistent course of conduct in Georgia through (1) the establishment of the policies, procedures, bylaws, and/or protocols for congregations of Jehovah's Witnesses in the United States, including the Cordele Congregation; (2) the establishment of the policies, procedures and/or protocols for appointing and supervising elders and ministerial servants within

the Jehovah's Witness organization and local congregations, including the Cordele Congregation; and (3) participating in the appointment of elders and ministerial servants, and/or exercising supervision and control over elders and ministerial servants, within the Jehovah's Witnesses organization, including the Cordele Congregation. *See* ECF No. 1 at ¶¶ 37-39. *See Exceptional Marketing*, 749 F.Supp.2d at 1363.

### C.  Specific Jurisdiction Exists Under the Due Process Clause

The Complaint alleges specific jurisdiction. "The Due Process Clause requires that the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1267 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985) (internal citations and quotations omitted). The plaintiff must establish that the defendant "'purposefully availed' itself of the privilege of conducting activities . . . in the forum state and there must be a sufficient nexus between those contacts and the litigation. Once this showing is made, a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.*

Defendants purposefully directed their organizational activities into Georgia by appointing and supervising Circuit Overseers and local elders with actual authority to place, supervise, and discipline volunteers in Georgia congregations, including the Cordele Congregation. *See* ECF No. 1 at ¶¶ 42-53. These contacts are not random, fortuitous, or attenuated; they are the product of a deliberate, structured national organizational framework that Defendants built and maintained.

Defendants argue the Complaint's hierarchical allegations are insufficient to impute the local congregation's contacts to them. *See* ECF No. 19 at 7-8. But this misreads the Complaint. Plaintiff does not rely on mere corporate affiliation. The Complaint alleges that Defendants directly

6

appointed the Circuit Overseers who supervised Cordele's elders (ECF No. 1 at ¶¶ 42-46); that Defendants jointly established all policies governing Bible study instruction and child safety in Cordele (*id.* at ¶¶ 37-39); that Defendants had a legal obligation to report abuse and their legal department controlled whether local law enforcement was notified (*id.* at ¶ 69); and that Defendants, through Cordele's elders, directly discouraged Plaintiff's mother from seeking outside legal recourse (*id.* at ¶¶ 123-124). These are allegations of direct operational control, not mere corporate oversight. These allegations "arise out of or relate to" the Defendants' contacts with Georgia through their agents—the Circuit Overseers who appointed and supervised Cordele's elders as required under the Due Process Clause of the Fourteenth Amendment. *See Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.,* 140 F.4th 1304, 1316-17 (11th Cir. 2025) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017).

Defendant's reliance on *Walden v. Fiore*, 571 U.S. 277, 286 (2014) is misplaced. In *Walden*, the defendant had no contacts with the forum state whatsoever and no part of the course of conduct occurred in the forum state. *Walden*, 571 U.S. at 289. Here, by contrast, Defendants maintained an ongoing organizational presence in Georgia through their appointed agents, including the Circuit Overseers and elders, established policies directing operations in Georgia, and exercised supervisory authority over Georgia personnel. *See* ECF No. 1 at ¶¶ 37-59, 70-94.

Similarly, Defendants' reliance on *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1273 (11th Cir. 2002), for the proposition that "[t]he Complaint's allegations of hierarchical structure and policy-setting are insufficient to establish the level of control necessary to impute the perpetrator's or Cordele Congregation's contacts to the Moving Defendants" (ECF No. 19 at 8) is misplaced. In *Meier*, the Court examined whether the parent company's Florida Subsidiary could be treated as an agent when the subsidiary had its own independent corporate interests. 288 F.3d

at 1273. In addition to finding that Florida subsidiaries conducted business solely for the defendants, the court also noted that "personal jurisdiction over affiliated parties, whether a parent or another related subsidiary, is warranted when the resident corporation acts on behalf of those foreign affiliates." *Id*. Here, the Complaint alleges that the Cordele Congregation is not separately incorporated (ECF No. 1 at ¶ 80), exists solely within Defendants' hierarchical organizational structure (*id*. at ¶¶ 34-46), and its elders/agents act on behalf of the Defendants (*id*. at ¶¶ 47-52). This is precisely the alter-ego scenario *Meier* contemplated as sufficient for jurisdictional imputation.

The exercise of jurisdiction here is consistent with traditional notions of fair play and substantial justice because Defendants deliberately structured an organization that exercises operational control over Georgia congregations, appoints Georgia church officers, and directs Georgia-based religious activities. Therefore, this Court should deny Defendants' Motion to Dismiss pursuant to Rule 12(b)(2).

### D. Defendants Are Not Entitled to Dismissal for Lack of General Jurisdiction at This Stage

While Plaintiff primarily relies on specific jurisdiction, the Complaint also alleges facts supporting general jurisdiction. Defendants' affiliations with Georgia extend far beyond a single congregation, and the Complaint contains allegations regarding Americus Congregation where Davis previously served as a Bible study teacher. *See* ECF No. 1 at ¶¶ 74-77. Defendants operate numerous congregations across Georgia through appointed agents and Circuit Overseers, who travel to Georgia congregations on a quarterly basis. (ECF No. 1, ¶¶ 34, 43-53). Whether these contacts are sufficiently "continuous and systematic" to render Defendants "at home" in Georgia under *Daimler AG v. Bauman*, 571 U.S. 117, 124 (2014), is a factual question that cannot be resolved at the motion to dismiss stage without jurisdictional discovery. Plaintiff respectfully

requests that, should the Court have any doubts regarding jurisdiction, it permit limited jurisdictional discovery. *See Posner v. Essex Ins. Co.*, 178 F.3d 103, 109 (11th Cir. 1999) (recognizing qualified right to conduct jurisdictional discovery); *Aviation One of Florida, Inc. v. Airborne Insurance Consultants (PTY), Ltd.*, 722 Fed. App'x. 870, 878 (11th Cir. 2018) ("Jurisdictional discovery is appropriate when there is a dispute about the 'facts that would support [the plaintiff's] allegations of jurisdiction.'"); *Wooten v. La Salle Corrections*, 748 F.Supp.3d 1363, 1369 (M.D. Ga. 2024) ("Resolution of a pretrial motion that turns on findings of fact—for example, a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2)— may require some limited discovery before a meaningful ruling can be made").

## IV.    PLAINTIFF'S CLAIMS ARE SUFFICIENTLY PLEADED

### A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations and quotations omitted). Rule 12(b)(6) "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of . . . the necessary element." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007) (internal citations and quotations omitted).

### B.  The Complaint Is Not a Shotgun Pleading.

Defendants characterize the Complaint as an impermissible shotgun pleading because it names multiple Defendants collectively. *See* ECF No. 19 at 10-11. But the Complaint does not

9

obscure which conduct is attributed to which defendant—it alleges that all Defendants operated as a single, integrated organizational enterprise with joint control over the policies, personnel, and operations that gave rise to Plaintiff's injuries. The Eleventh Circuit has recognized that collective allegations against multiple defendants are permissible and appropriate where "the complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). The Complaint's detailed allegations regarding the organizational hierarchy (ECF No. 1 at ¶¶ 17-69) provide each Defendant with specific notice of the conduct attributed to them as participants in a joint organizational structure. The Complaint does not merely lump Defendants together with boilerplate labels—it describes with specificity how each entity functions within the hierarchy and contributes to the unified governance of congregations like Cordele. *Id.* Additionally, the Complaint does, despite Defendants' claims to the contrary, specify which defendants are responsible for the acts or omissions pleaded in the Complaint. *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015); ECF No. 1 at ¶¶ 134-163.

Furthermore, because the Complaint alleges a single integrated organization functioning through multiple corporate forms, treating the Defendants collectively is not only permissible but necessary at the pleading stage. Discovery will reveal the precise internal allocation of responsibilities among the corporate entities. Plaintiff should not be required to parse internal distinctions within the Jehovah's Witnesses entities at this stage that Defendants themselves have deliberately obscured through their complex and secretive organizational structure. *Id.* at ¶ 58.

Finally, even if the Court were to find any pleading deficiency, the proper remedy under Eleventh Circuit law is to order a more definite statement under Rule 12(e) or grant leave to amend—not to dismiss with prejudice. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295

10

(11th Cir. 2018) (holding that district courts should give plaintiffs the opportunity to replead before dismissing shotgun pleadings with prejudice); *see also Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006).

### C.  The Complaint Adequately Pleads Agency and Vicarious Liability.

Under Georgia law, the relationship of principal and agent exists "wherever one person, expressly or by implication, authorizes another to act for him." O.C.G.A. § 10-6-1. To show "actual agency, the purported principal must assume the right to control the time, manner, and method of the purported agent's work." *Barrs v. Acree*, 691 S.E.2d 575, 579 (Ga. App. 2010). Here, the Complaint alleges far more than "conclusory labels" as Defendants claim. *See* ECF No. 19 at ¶ 11. It alleges specific facts establishing an agency relationship: (a) Defendants appointed Circuit Overseers who had authority to appoint and remove elders and ministerial servants (ECF No. 1 at ¶¶ 42-46); (b) Circuit Overseers exercised supervision and control over local congregations on behalf of Defendants (*id*. at ¶ 46); (c) elders were appointed by and served at the pleasure of Defendants through Circuit Overseers (*id*. at ¶¶ 49-53); (d) Defendants established policies governing operations at local congregations, including the Cordele Congregation (*id*. at ¶¶ 37-41); and (e) Defendants, through their elders, assigned Davis as Plaintiff's Bible study teacher (*id*. at ¶ 91). These factual allegations—the power to appoint, supervise, control, and remove agents—are the hallmarks of an agency relationship under Georgia law. *See Barrs*, 691 S.E.2d at 524.

Defendants argue Davis was not their agent, relying on *Gillet v. Watchtower Bible & Tract Soc. of Pennsylvania, Inc.*, 913 So. 2d 618 (Fla. Dist. Ct. App. 2005). But *Gillet* involved a general congregant who was merely going "door-to-door canvassing and proselytizing." *Gillet*, 913 So. 2d at 620. Here, Davis was specifically selected, placed, and authorized by Defendants' agents to

serve as Plaintiff's Bible study instructor. ECF No. 1 at ¶¶ 71-73, 85-92. Defendants' policies authorized and governed Idle Teachers—including Davis—as actual and/or apparent agents of the organization. *Id*. at ¶ 72. Additionally, Defendants: (1) authorized the Idle Teacher program through which Davis was placed; (2) approved the Bible study curriculum Davis used; (3) set rules governing where and how Bible study could occur; (4) directed COVID-19 compliance requirements; and (5) retained authority through Circuit Overseers to approve, suspend, or remove anyone exercising such a role. *Id*. at ¶¶ 43-47, 70-78, 104-107. This is textbook agency and Defendants' claims should be rejected.

Defendants also argue that sexual misconduct falls outside the scope of employment under *Piedmont Hosp., Inc. v. Palladino*, 276 Ga. 612 (2003) and *Doe v. Fulton-DeKalb Hospital Authority*, 628 F.3d 1325, 1333 (11th Cir. 2010). But Plaintiff does not rely upon a respondeat superior theory for Davis' intentional acts. Plaintiff asserts Defendants were independently negligent—in negligently selecting, placing, failing to supervise, and failing to warn about Davis. *See* ECF No. 1 at ¶¶ 134-163. These are direct negligence claims, not derivative ones. Palladino does not apply to Defendants' own independent negligence. *See Quynn v. Hulsey*, 310 Ga. 473, 477 (2020) ("[C]laims for negligent hiring, training, supervision, and retention are based on the alleged negligent acts of the employer.").

**D.  The Complaint Sufficiently States Claims for Negligence Under Georgia Law.**

12

### 1. *Defendants Owed a Duty to Plaintiff.*

Under Georgia law, "[e]very person shall exercise ordinary care to prevent unreasonable, foreseeable risks of harm to others." O.C.G.A. § 51-1-2. "As a general rule, a person who undertakes the control and supervision of a child, even without compensation, has the duty to use reasonable care to protect the child from injury." *Allen v. Zion Baptist Church of Braselton*, 761 S.E.2d 605, 610 (Ga. App. 2014) (quoting *Bull Street Church of Christ v. Jensen*, 504 S.E.2d 1, 5 (Ga. App. 1998)). The Complaint alleges that Defendants, through their agents, assumed custody of Plaintiff by placing Davis as his Bible study teacher. *See* ECF No. 1 at ¶¶ 70-73, 84-91, 97. Plaintiff's mother entrusted her child to the Defendants' organizational care, and Defendants voluntarily accepted that responsibility. This is sufficient to establish a duty under Georgia law.

### 2. *The Complaint Adequately Pleads Pre-Tort Knowledge of Davis' Dangerous Propensities.*

The Georgia Supreme Court has held that an employer may be held liable for such a tort "only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff," such that it is reasonably foreseeable "that the employee could cause the type of harm sustained by the plaintiff." *Munroe v. Universal Health Svcs.*, 277 Ga. 861, 863 (2004) (citation and punctuation omitted). "Negligent supervision and retention each require a showing that the defendant had actual or constructive knowledge of the danger that resulted in plaintiff's injury." *Davis v. BOJ of WNC, LLC*, No. CV 121-155, 2023 WL 5938769, at *9 (S.D. Ga. Sep. 12, 2023) (quoting *Doe v. Saint Joseph's Cath. Church*, 870 S.E.2d 365, 374 (Ga. 2022)). Similarly, negligent failure to warn claims require proof of the defendants' "duty to avoid only reasonably foreseeable harms, breach of such duty, proximate causation (including contributory

13

negligence), and damages, just as [plaintiff's] claim for negligent hiring, retention, and supervision does." *Allen v. Zion Baptist Church of Braselton*, 761 S.E.2d 605, 612 (Ga. App. 2014).

Defendants argue Plaintiff fails to allege pre-tort knowledge of Davis' dangerous propensities. But the Complaint alleges multiple specific warning signs that Defendants knew or should have known about before the abuse began.

First, the Complaint alleges that Davis had an unexplained, sudden departure from the Americus Congregation immediately after one-on-one Bible study with a minor boy ended abruptly. *See* ECF No. 1 at ¶¶ 74-77. The Complaint alleges that such sudden congregational transfers are not normal practice and are typically documented. *Id.* at ¶¶ 77-78. Defendants, who maintain records of transfers, knew or should have known the reason.

Next, Davis' own uncle, Elder Daniel, voted against Davis becoming a ministerial servant because he "knew something was wrong with him." *Id.* at ¶ 88. Defendants' agents—the Cordele elders—possessed this information yet assigned Davis to teach a minor male child one-on-one.

Additionally, the Complaint alleges that no background check was conducted before Davis was placed with Plaintiff. *Id.* at ¶ 89. The combination of an unexplained congregational transfer, a disqualifying elder vote, and no background check is sufficient at the pleading stage to allege that Defendants should have known that Davis posed a risk.

Next, the Complaint alleges that during the abuse period, Defendants' agents directly confronted Davis for continuing in-person Bible study with Plaintiff in violation of COVID-19 protocols—yet took no further action. *Id.* at ¶¶ 103-109. Knowledge that an adult volunteer was persistently seeking unsupervised private access to a minor, in defiance of organizational directives, is precisely the type of danger signal that imposes a duty to act.

Taken together and viewed in Plaintiff's favor, as they must be at the pleading stage, these allegations more than plausibly establish that Defendants had actual or constructive knowledge of Davis' dangerous propensities before and during the abuse. *See Munroe*, *277 Ga.* at 863. Accordingly, Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) should be denied.

### E.  The First Amendment Does Not Bar Plaintiff's Claims.

The ecclesiastical abstention doctrine does not provide blanket immunity to religious organizations for all tort claims and does not bar the claims against the Defendants in this matter. The doctrine applies only where adjudication would require the court to interpret or weigh religious doctrine. Where claims can be resolved by applying neutral principles of tort law, the First Amendment poses no barrier to adjudication. *See Jones v. Wolf*, 443 U.S. 595, 602-04 (1979) (approving "neutral principles" approach). Further, the Eleventh Circuit has recognized that "where the method of resolution of the controversy avoids excessively entangling the judiciary in questions of ecclesiastical doctrine or belief, the first amendment might permit a court to adjudicate the matter." *Crowder v. S. Baptist Convention*, 828 F.2d 718, 722 (11th Cir. 1987). Civil courts may apply neutral principles of law to decide church disputes that "involve . . . no consideration of doctrinal matters." *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, 719 F. App'x 926, 928 (11th Cir. 2018) (quoting *Jones v. Wolf*, 443 U.S. at 603-04). "Although the neutral-principles approach is particularly well suited to property cases, courts may decide other types of church-related disputes by application of purely secular legal rules." *Beckman v. Regina Caeli, Inc.*, 752 F. Supp. 3d 1346, 1361 (N.D. Ga. 2024) (quoting *Carrier v. Ravi Zacharias Int'l Ministries, Inc.*, No. 1:21-CV-3161-TQT, 2022 WL 1540206, at *4 (N.D. Ga. May 13, 2022) (internal citations and quotations omitted). However, "courts may not use the guise of the neutral principles approach to determine matters of religious doctrine, polity, [or]

15

governance." *Beckman*, 752 F. Supp. 3d at 1361(quoting *Kelley v. Decatur Baptist Church*, No. 5:17-CV-01239-HNJ, 2019 WL 8014314, at \*9 (N.D. Ala. Mar. 27, 2019)).

Plaintiff's claims are grounded in neutral, secular principles of tort law. Plaintiff asks this Court to apply secular negligence standards to determine whether: (1) Defendants breached their duty of care to Plaintiff; (2) Defendants conducted a background check before placing an adult volunteer with a child; (3) Defendants properly supervised a volunteer's access to a child; and (4) Defendants warned a parent about known danger signals involving her child. These are quintessentially secular inquiries and courts across the country have been permitted to adjudicate tort claims such as these. *See Malicki v. Doe*, 814 So. 2d 347, 360 (Fla. 2002) ("[T]he Free Exercise Clause is not implicated in this case because the conduct sought to be regulated; that is, the Church Defendants' alleged negligence in hiring and supervision is not rooted in religious belief. Moreover, even assuming an incidental effect of burdening a particular religious practice, the parishioners' cause of action for negligent hiring and supervision is not barred because it is based on neutral application of principles of tort law."); *Konkle v. Henson*, 672 N.E.2d 450, 455 (Ind. Ct. App. 1986) (Claims of negligent hiring and retention of a minister who sexually abused of a minor are not barred by First Amendment).

Defendants nonetheless invoke the ecclesiastical abstention doctrine in an attempt to place their organizational conduct beyond civil accountability. This argument fails for a fundamental reason: Plaintiff's claims require no interpretation of religious doctrine. They require only the application of neutral principles of Georgia tort law. Plaintiff's claims do not ask this Court to evaluate the theological content of Bible study, the correctness of Jehovah's Witnesses' two-witness rule as a matter of scripture, or whether disfellowship was spiritually justified. These are the same questions courts apply every day to schools, sports organizations, and secular youth

programs—none of which requires any theological inquiry. Therefore, this Court should deny Defendants' Motion to Dismiss on the grounds that it violates the ecclesiastical abstention doctrine.

## VII. CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss in its entirety. This Court has personal jurisdiction over each Defendant based on their directed organizational activities in Georgia through appointed agents. The Complaint is not a shotgun pleading but reflects the integrated nature of the Defendants' enterprise. The Complaint adequately pleads agency, duty, pre-tort knowledge, and each element of Plaintiff's four negligence counts. And Plaintiff's claims require no interpretation of religious doctrine—they require only the application of neutral principles of Georgia tort law to secular operational failures that allowed a now convicted child predator to abuse a minor child over one hundred times. If the Court finds any portion of the Complaint deficient, Plaintiff respectfully requests leave (1) to amend pursuant to Federal Rule of Civil Procedure 15(a)(2); and (2) to conduct jurisdictional discovery.

Dated: June 12, 2026

Respectfully submitted,

s/Maura D. White
*Attorney for Plaintiff*

Maura D. White
ROMANUCCI & BLANDIN
321 N. Clark St., Suite 900
Chicago, IL 60630
P: (312) 458-1000
E-mail: mwhite@rblaw.net
IL Bar # 6289336
*Appearing Pro Hac Vice*

John C. Cotton
Georgia Law Team, P.C.
Post Office Box 897

17

Cordele, Georgia 31010
P: (229) 273-9490
F: (229) 279-9491
Email: craig@galawteam
GA Bar # 189801

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of June 2026, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will automatically send electronic

notification of such filing to all counsel of record.

Respectfully submitted

s/ Maura D. White